242 S.W.2d 509 (1951)
FANTIN
v.
L. W. HAYS, Inc. et al.
No. 42086.
Supreme Court of Missouri, Division No. 2.
September 10, 1951.
Motion for Rehearing or Transfer to Denied October 8, 1951.
*510 Marcy K. Brown, Jr., Joseph N. Miniace and Louis Pelofsky, all of Kansas City, for appellant.
Tom J. Stubbs, Jack G. Beamer, and Stubbs, McKenzie, Williams & Merrick, all of Kansas City, for respondents.
Motion for Rehearing or Transfer to Court en Banc Denied October 8, 1951.
BARRETT, Commissioner.
On November 10, 1947 the plaintiff, Eugene J. Fantin, and his friend, Clarence Sutton, left Kansas City on a trip to a farm north of Pattonsburg on Highway 69 in Fantin's 1946 Dodge pickup truck. As Fantin drove north across a bridge one half mile south of Pattonsburg his truck was involved in a collision with a 1939 International dump truck owned by C. R. Davis and leased to L. W. Hays, Incorporated. The bridge is a curvilinear structure four hundred seventy-nine feet six inches long. The pavement was dry and free from ice but the bridges were icecovered. According to the testimony of the plaintiff he approached the bridge at a speed of twenty-five to thirty-five miles an hour and immediately began skidding from side to side on the icy pavement of the bridge. He "pumped his brake" and tried to steer the truck but lost control of it and the truck skidded from the inside of the curve over the center line of the bridge into the west rail of the bridge ninety-nine feet five and one half inches from the north end of the bridge. It was at this point that the defendants' truck traveling south collided with the plaintiff's pickup truck.
The plaintiff submitted his right to recover from the defendants upon the humanitarian doctrine and the hypothesis that the driver of the dump truck saw or should have seen the plaintiff in a position of imminent peril and thereafter could have stopped his truck or slackened its speed and avoided the collision. Although the question is not without its difficulties, it is assumed for the purposes of this opinion that the plaintiff's evidence demonstrated a submissible humanitarian case. Austin v. Hemperley, Mo.Sup., 228 S.W.2d 712. The plaintiff testified that his truck began to skid as he entered the bridge and the defendants' truck was then "away up off the bridge." He said that when he skidded into the wrong traffic lane and struck the bridge the defendants' truck was 200 to 300 feet north of the bridge. In addition to their answers the defendant Davis filed a counterclaim for the damages to his truck. He submitted his right to recover on the counterclaim upon Fantin's speed and the fact that Fantin drove his truck from the right-hand or east side of the highway to the left-hand or west side of the highway into Davis' truck. The truck *511 driver, Tilley, testified that because of the icy bridges he had reduced the speed of his truck from forty to twenty-five or thirty miles an hour. He did not notice Fantin's truck until it entered the bridge at a speed of fifty to sixty miles an hour. He said that Fantin's truck did not begin to skid until it was some distance into the bridge and that it did not slide into the bridge railing until both vehicles were upon the bridge and but a few feet apart. Tilley said that he attempted to drive to the left and avoid Fantin's truck and that he was traveling but fifteen miles an hour when they collided. By a ten to two vote the jury found against the plaintiff on his cause of action and in favor of Davis on his counterclaim and fixed his damages at $1350. Upon this appeal the plaintiff insists that he is entitled to a new trial, principally for the reason that the trial court prejudicially erred in instructing the jury.
Instructions C and D, given at the request of the defendants, were converse humanitarian instructions and the plaintiff does not question the defendants' right to have such instructions given. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461. He insists, however, that the instructions are erroneous in the circumstances of this case because they limit the zone of peril to discovered rather than to discoverable peril and because they eliminate from the jury's consideration the fact that the truck driver, Tilley, traveling at fifteen to twenty miles an hour saw the peril of plaintiff when he was skidding and sliding when 450 feet separated the two vehicles. In this latter connection it is argued that the facts submitted do not have the legal effect of showing that there could have been no humanitarian negligence on the defendants' part. That, however, is the plaintiff's interpretation of the facts and evidence. We have assumed that the plaintiff made a submissible humanitarian case but under the defendants' evidence, as hypothesized in Instructions C and D, after the plaintiff's peril arose there was not time and space in which Tilley could have stopped his truck, slackened its speed or turned it aside and have avoided the collision. And the defendants were entitled to conversely hypothesize that view of the evidence. Roselein v. Chicago & E. I. R. Co., Mo.Sup., 214 S.W.2d 13. The plaintiff's evidence extended the zone of peril and the defendants' evidence cut the zone of peril down and each party was entitled to hypothesize his evidence and view of the situation for the jury's choice. Johnson v. Hurck Delivery Service, 353 Mo. 1207, 187 S.W.2d 200. Of course if the instructions failed to submit discoverable peril as well as discovered peril they would be erroneous. Colvin v. Mills, 360 Mo. 1181, 232 S.W.2d 961; Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60. But the instructions under consideration did not either in express terms or by implication eliminate discoverable peril, they in fact adopted the plaintiff's hypothesis, "if you shall believe and find from the evidence that after the vehicle operated by plaintiff was in a position of imminent peril of being struck by the truck operated by defendants, * * *." The plaintiff's instruction hypothesized that if Tilley "either saw or by using the highest degree of care could have seen such peril and danger, * * *." The instructions are in substantially the same language as the instructions in Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742 and the trial court did not prejudicially err in giving them. Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562; Johnson v. Hurck Delivery Service, supra.
Instruction E hypothesized as the sole cause of the collision that the plaintiff operated his truck so as to cause the same to "suddenly go from a position of safety on the right-hand side of the bridge * * * to the left of said bridge and closely in front of the motor vehicle truck operated by the defendants * * *." It is insisted first that Tilley was guilty of negligence as a matter of law and therefore the defendants were not entitled in any event to a sole cause instruction, and that Davis was not entitled to recover on his counterclaim. The plaintiff details and analyzes the evidence and characterizes Tilley's conduct in the circumstances as negligent as a matter of law. It is not necessary to *512 analyze the evidence and further point out that in this respect the plaintiff relies only upon his version of the occurrence. Bootee v. Kansas City Pub. Serv. Co., 353 Mo. 716, 183 S.W.2d 892. Under the defendants' version of the collision Tilley could not be said to be guilty of negligence as a matter of law, Hall v. Hannibal-Quincy Truck Line, Mo.Sup., 211 S.W.2d 723, under his testimony and the inferences from it he was not negligent in any respect and the collision was due to Fantin's negligent speed and failure to drive upon his side of the highway. Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114. Here the evidence and inferences upon which the plaintiff relies were not undisputed as they were in Wilkins v. Stuecken, 359 Mo. 1047, 225 S.W.2d 131. It is urged that in the use of the phrase "closely in front of" the instruction is indefinite, misleading and confusing. It is said that "closely in front of" could mean anything in a humanitarian case, that it is a highly technical term and in this instruction undefined and unlimited. But in so contending the plaintiff seizes upon the phrase "closely in front of" out of its context and argues as though the phrase had the same meaning as "immediately," necessarily referring to space or distance. The argument ignores the fact that the instruction had previously employed the word "suddenly" which refers to time and in effect the converse of a humanitarian situation. Prater v. Rausch, 344 Mo. 888, 891, 129 S.W.2d 910, 911. In Schlemmer v. McGee, Mo.Sup., 185 S.W.2d 806, 807 the defendant's sole cause instruction hypothesized that the driver "suddenly drove his automobile from a stopped position on the north shoulder of Highway No. 40 toward the south side of said highway and into the path of the defendants' automobile truck * * *." The instruction, as does the one under consideration, contained the phrase "and said injuries and damage were not to due to any negligence on the part of defendants in any of the particulars set out in other instructions herewith given you" and it was held that the instruction was a proper sole cause submission in the circumstances. In Branson v. Abernathy, supra [344 Mo. 1171, 130 S.W.2d 567] the approved sole cause submission was that "plaintiff so operated his automobile as to cause same to suddenly go from a position of safety on his right side of the highway to the left of said highway and closely in front of defendant Keene's automobile; * * *." Rembusch v. Prebe, 358 Mo. 409, 215 S.W.2d 433 was not a humanitarian case but the approved sole cause submission there was that "plaintiff so operated his tractor-trailer as to cause same to suddenly go from a position of safety on his right side of the highway to the left of said highway and closely in front of defendant's motor vehicle, * * *." Instruction E in this case is in substantially the same language as the instructions in those cases and it was not prejudicial error for the court to give it in the circumstances. See also: Dipaoli v. Langemann, Mo.App., 192 S.W.2d 35; Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775; Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461; and Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743.
By Instruction H the defendant Davis submitted his right to recover on his counterclaim. He submitted as the hypothesis of his recovery Fantin's "dangerous and excessive rate of speed, and drove and operated the same from the right-hand or east side of said highway to the left hand or west side of said highway and into collision with said defendant's automobile truck * * *." In discussing other instructions some of the plaintiff's arguments concerning this instruction have been answered but it is objected that the instruction fails to properly hypothesize facts for the jury's guidance in determining negligence as to speed and it is insisted that the instruction ignores the humanitarian doctrine. In the first place, this instruction concerns the counterclaim of the defendant Davis. Tyrer v. Moore, Mo.App., 250 S.W. 920. Unquestionably the submission of speed by the words "dangerous and excessive rate of speed" is erroneous for lack of a proper factual hypothesization. Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541; Dahlen v. Wright, Mo.Sup., 235 S.W.2d 366. But in *513 this case there was a conjunctive submission of speed and of driving and operating the pickup truck on the left or wrong side of the highway and since the second submission was proper, Hall Motor Freight v. Montgomery, 357 Mo. 1188, 212 S.W.2d 748, 2 A.L.R.2d 1292; Hall v. Hannibal-Quincy Truck Line, supra; King v. Friederich, Mo.App., 43 S.W.2d 843, it is not grounds for a new trial that the first submission was improper. Bowman v. Standard Oil Co., 350 Mo. 958, 169 S.W.2d 384; Berry v. Baltimore & O. R. Co., Mo.Sup., 43 S.W.2d 782; Nixon v. Hill, 227 Mo.App. 312, 52 S.W.2d 208. In the cases upon which the plaintiff relies there was a disjunctive submission, Alexander v. Hoenshell, Mo.App., 66 S.W.2d 164; Green v. Guynes, Mo.Sup., 235 S.W.2d 298, or an erroneous submission of a single issue. Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872; State ex rel. Burger v. Trimble, 331 Mo. 748, 55 S.W.2d 422. The court did not prejudicially err in the respects complained of in giving Instruction H.
It is urged that the plaintiff is entitled to a new trial because the jury did not have during its deliberations and the court did not read to the jury an instruction defining the terms "negligence" and "highest degree of care." The problem arises in these circumstances: The plaintiff and the defendants offered identical instructions defining these terms. The court indicated
that the instruction offered by the plaintiff would be refused and the instruction offered by the defendants would be given but "when the instructions were read to the jury by the Court, through inadvertence, the instruction offered by the defendants, and which was by the Court given, was omitted and was not read to the jury, nor did the jury have that instruction when it went to the jury room for deliberations on the case." Also as stated in the record "No record was made nor exceptions taken as to the refusal or oversight except in the motion for new trial filed by the plaintiff." It has been held that an instruction defining the term "highest degree of care" is not prejudicially erroneous for failure to also define the term "negligence." Silsby v. Hinchey, Mo.App., 107 S.W.2d 812. And it has been held that a humanitarian instruction submitting and hypothesizing every essential element of the plaintiff's case is not erroneous for failure to define the term "negligence." Pollinger v. Messerschmidt, Mo.App., 260 S.W. 804. It has been said that the term "highest degree of care" is a technical term and should therefore be defined for the jury. State ex rel. Berberich v. Haid, 333 Mo. 1224, 64 S.W.2d 667. It does not necessarily follow, in the circumstances of this case, as the plaintiff urges that the oversight was so prejudicial as to require a new trial. The plaintiff employed the term in his main instruction hypothesizing the defendants' liability under the humanitarian doctrine. It was required that Tilley "either saw or by using the highest degree of care could have seen such peril and danger." It was required that Tilley could have stopped his truck or slackened its speed and "that said Robert Tilley failed to use such highest degree of care so to do." The term was employed in the defendants' two converse instructions and imposed upon their driver, Tilley, the duty "in the exercise of the highest degree of care." It was not used in the sole cause instruction. The term was used in the instruction on the counterclaim but again it referred to Tilley; "that at all of the times mentioned in evidence the driver of said defendant's automobile truck was in the exercise of the highest degree of care." The term is a technical term but after all the instruction was a mere abstract definition: "The `highest degree of care' as used in these instructions means such care as would usually be exercised by a very careful person under the same or similar circumstances." The instruction was not specifically connected with any other particular instruction and it did not direct a verdict. It was not as if there were two instructions, one imposing one degree of duty, the duty of ordinary care, and the other another degree of duty, the highest degree of care. Foy v. United Rys. Co., 205 Mo.App., 521, 226 S.W. 325. The omission to read the instruction to the jury was not an "invited" error, or an error common to both parties as those terms are generally used 5 C.J.S., Appeal and *514 Error, § 1507(c), p. 205; Moll v. Pollack, 319 Mo. 744, 8 S.W.2d 38; Bennette v. Hader, 337 Mo. 977, 87 S.W.2d 413, 101 A.L.R. 1190, and yet there is an analogy in the circumstances of this case because the term was employed in the instructions of both parties and if there was any detrimental effect it is not demonstrated that it affected one party or either party. Woods v. Southern Ry. Co., Mo.Sup., 73 S.W.2d 374. And finally, in the absence of demonstration of prejudicial effect to the rights of the plaintiff it may not be said, in the circumstances of this case, that the inadvertent omission to read these definitions to the jury was so prejudicially erroneous as to compel the granting of a new trial of this cause. Mo.R.S.1949, Sec. 512.160, subd. 2.
Accordingly the judgment is affirmed.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.