MARIE E. PRATER v. ALF C. RAUSCH, Sometimes Known as ALFRED C. RAUSCH, Appellant.—129 S. W. (2d) 910.

Division One, June 14, 1939.

*Walter Wehrle* for appellant.

_George F. Heege_ for respondent.

HYDE, C.—This is an action for damages for $15,000 for personal injuries which was submitted solely upon humanitarian negligence. The jury found for defendant but the court sustained plaintiff's motion for new trial upon the ground that it erred in giving defendant's Instruction No. 4. Defendant has appealed from the order granting a new trial.

Plaintiff, according to her evidence, was riding in an automobile driven by her husband, in a southeasterly direction across Ladue Road (an east and west highway) in St. Louis County. Their automobile came south out of McKnight Road (a north and south road, which did not continue south of Ladue), angled to the southeast across Ladue toward Berkley Lane (also a north and south road) which ran south from Ladue a short distance east of where McKnight came in on the

north side. Both plaintiff and her husband testified that he stopped his car on McKnight a little south of the stop sign (located about 24 feet north of the north edge of the Ladue pavement) and that they both looked both ways. Their testimony was that they could only see about 150 feet west, the distance to the top of the hill on Ladue in that direction, and that there was no vehicle in sight on the hill. Plaintiff did not see defendant's car until just before it struck their car south of the south edge of the Ladue pavement. Plaintiff's husband said that he drove across Ladue in second gear after making the stop sign stop; that as he was leaving the pavement on the south side of Ladue going into Berkley Lane, he saw defendant's car coming about thirty-five feet away; that it struck the right rear fender of his car when it was about eight feet south of the south edge of Ladue pavement; that defendant "turned his car to the right in across Berkley Lane;" that defendant "was driving fifty to fifty-five miles an hour;" and that "if he (defendant) had stayed on Ladue he would have been all right."

Defendant's evidence tended to show that the car in which plaintiff was riding came out of McKnight Road, without making a stop, at from thirty-five to forty-five miles per hour; that it never even slowed down; that there was considerable traffic at the time on Ladue; that this car missed another car, going west on Ladue by only two feet (according to its driver who testified as defendant's witness); that defendant's car was only thirty-five feet west of Berkley Lane, going thirty miles per hour, when plaintiff's husband suddenly drove on to Ladue directly in front of defendant; that defendant swerved to the right (there being another car to the left), and that "the collision took place right at the south edge of Ladue."

Defendant's Instruction No. 4, which the trial court thought erroneous, was as follows:

"The Court instructs the jury that the defendant was not required under the law to stop or attempt to stop his automobile, to slow same down, to swerve the same or to sound an alarm on same until he saw, or by the exercise of the highest degree of care, could have seen that the automobile with plaintiff therein was approaching or in imminent danger or peril of being struck by defendant's automobile, and then he was required under the law, to exercise the highest degree of care in using the means at hand to avoid striking said automobile; and in this connection you are instructed that if you find and believe from the evidence that the automobile in which plaintiff was riding *was driven immediately in the path of defendant's automobile,* and in so close proximity thereto as to make it impossible for the defendant to prevent his automobile from colliding with the automobile in which plaintiff was riding, by the exercise of the highest degree of care in the operation thereof, then your verdict must be in favor of the defendant."

While the first part of this instruction correctly stated plaintiff's duty under the humanitarian rule, the last clause has the same defect (the words we have italicised) condemned by this court in Collins v. Beckman (Mo.), 79 S. W. (2d) 1052; Martin v. Fehse, 331 Mo. 861, 55 S. W. (2d) 440; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809; Burke v. Pappas, 316 Mo. 1235, 293 S. W. 142. This case, like all of those cases, was a right angle crossing case. [See Kirkham v. Jenkins Music Co., 340 Mo. 911, 104 S. W. (2d) 234.] As said in the Collins case: ''Plaintiff's car was moving toward the path of defendant's car, and from the evidence the jury may have found that she and her husband were oblivious of the near and dangerous approach of the latter, and that defendant, in the exercise of due care, so observed or should have so observed. In such situation, defendant was not authorized to wait until plaintiff's car was *immediately in his path* before taking steps to avert the impending collision.'' It is apparent that such language too narrowly restricts the zone of imminent peril. The word ''immediately'' as used therein refers to space or distance. If the word ''suddenly'' (which refers to time) had been used (that is, ''was driven so suddenly toward the path of defendant's automobile and in so close proximity thereto'') this part of the instruction would have been made to harmonize with the idea expressed in the first part thereof, so as to make a correct converse of plaintiff's humanitarian submission. As it was written, it was to say the least misleading and confusing, with respect to what constituted the zone of imminent peril and when defendant's duty commenced. This was a sufficient ground for the action of the trial court in granting plaintiff a new trial.

The order is affirmed and the cause remanded. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur, except *Hays, P. J.,* absent.