CLYDE TEAGUE v. PLAZA EXPRESS COMPANY, a Corporation, CARL COLLIER and ALICE LOUISE TEAGUE, Appellants.—No. 40319.—205 S. W. (2d) 563.

Division One, November 10, 1947.

*R. F. Baynes* and *Jones & Jones* for appellants.

1188

*Ward & Reeves* and *Hal H. McHaney* for respondent.

HYDE, J.—This action is for $15,000 damages for personal injuries, sustained in a collision between an automobile, in which plaintiff was riding, driven by her daughter, defendant Alice Louise Teague, and a truck owned by defendant Plaza Express Company and driven by defendant Collier. The jury's verdict was for the Express Company and Collier; but they found for plaintiff against her daughter. However, the trial court sustained plaintiff's motion for new trial and also the motion of defendant Alice Teague. The Express Company and Collier have appealed from the order granting a new trial against them.

The collision occurred at the junction of Pemiscot County Route U (upon which Alice Teague was driving west about 50 miles per hour) with United States Highway 61 (upon which Collier was driving north about 35 miles per hour); it was dark and both had their lights on. There was a junction sign, a warning sign and a stop sign on Route U east of the junction and also curving approaches to take traffic into Highway 61 both north and south of the right angle intersection. The weather was clear and dry and the surrounding country was flat so the car lights could be seen for more than a mile. Alice Teague was unfamiliar with the road, did not know she was approaching the intersection, did not see any of the signs and did not see the truck. She never slackened speed and did not realize there would be a collision until it occurred. Collier had been over the road frequently and was familiar with the intersection. There have been three cases in the appellate courts for damages for deaths or injuries caused by this collision. They are White v. Teague (Mo. App.), 177 S. W. (2d) 517 and White v. Teague, 353 Mo. 247, 182 S. W. (2d) 288 (same case); White v. Plaza Express Co. (Mo. App.), 188 S. W. (2d) 847; Teague v. Plaza Express Co., 354 Mo. 582, 190 S. W. (2d) 254. Reference is made to these opinions for a more detailed statement of the facts. In these former decisions, it was settled that there was a jury case against the Express Company and Collier on humanitarian negligence; and that issue is not raised in this case.

The negligence charged and submitted against Alice Teague was that she "operated her automobile at a high, unusual and dangerous rate of speed and in excess of the rate of speed a careful and prudent operator under similar circumstances would have driven said automobile"; and that she "failed to keep a vigilant watch ahead for the approaching truck." Her own testimony showed her to be guilty of these charges of negligence. [See White v. Teague, 353 Mo. 247, 182 S. W. (2d) l. c. 289 so holding.] Against the Express Company and Collier plaintiff submitted only humanitarian negligence of

failure to warn, slacken speed or stop. The court sustained both motions for a new trial because of error in instructions 7D (a sole cause instruction) and 10D (a converse humanitarian instruction) given at the request of the Express Company and Collier. The order granting new trial stated that these instructions "either cast additional burden on defendant Teague or confused the jury by mixing issues."

It is contended that the trial court had no authority to grant a new trial because of Section 118 (847.118 Mo. Stat. Ann.) of our new code (Laws 1943, p. 353, 1. c. 388) because the plaintiff's motion, which was filed in December 1944 (before the effective date of the new code), was not passed on within 90 days thereafter. However, we have held in Davis v. Lynn, 354 Mo. 1181, 193 S. W. (2d) 609, that the new code contained no requirement limiting the sustaining of a previously filed motion for new trial to 90 days after its effective date; and that Section 3 thereof (847.3 Mo. Stat. Ann.) gave the court the power in all actions then pending to apply the former procedure, in a particular action pending, when in its opinion the application of the new code thereto would not be feasible or work injustice. We further held therein that by exercising its authority to consider the pending motion under the old code it would be deemed to have been of said opinion and to have continued the application of the old procedure. Appellants say that the motion herein was argued and taken under advisement within 90 days after the effective date of the new code, and was later required to be re-argued before it was sustained. This would support the conclusion that the court was continuing to apply the old procedure. Since the new code made no provision for the application of Section 118 to pending motions for new trial, such an application of it, more than 90 days after its effective date, would have worked injustice in many cases because parties could not have known when the time for appeal would expire in such cases. Thus the right of appeal might have been lost in many pending cases by such a later strict interpretation and application of this section. Therefore, we think the construction of Section 3 made in Davis v. Lynn, supra, was correct and in accordance with the spirit and purpose of the new code to decide cases on the merits, whenever possible, instead of upon procedural technicalities.

Instruction 10D was as follows: "The Court instructs the jury that the plaintiff seeks to recover damages in this case against the Defendants, Carl Collier and Plaza Express Company, upon the ground that the Defendant, Carl Collier, operator of the motor truck mentioned in evidence, saw, or by the exercise of the highest degree of care could have seen, the vehicle driven by the defendant, Alice Louise Teague, and the occupants therein in a place of imminent peril and that the *occupants of said Teague car were oblivious to their peril in time, by the exercise of ordinary care on their part;* the said occu-

1192

*pants of the Teague car thereafter to avoid striking the vehicle driven by defendant Carl Collier, with the means at hand, by stopping, slackening the speed or swerving his truck* but that the said Carl Collier negligently failed to do so.

"You are further instructed that unless the Plaintiff has shown by a preponderance of the credible evidence in this cause and to your reasonable satisfaction that the said Carl Collier saw, or by the exercise of the highest degree of care *could have seen the occupants. of the Teague car* in a place of imminent, *immediate and inescapable· peril,* and that the driver of the Teague car was oblivious thereto, in time, by the exercise of the highest care and with the means and appliances at hand, and with safety to himself thereafter, to have sounded his horn, stopped, slackened .the speed or swerved his vehicle and avoid the Teague car striking the truck driven by the said Carl Collier, and that the said Carl Collier negligently failed to do ·so and that the injuries to plaintiff if any, directly resulted therefrom, then the plaintiff cannot recover as against the defendants, Plaza Express Company and Carl Collier, and your verdict must be in favor of the defendants, Plaza Express Company and Carl Collier, regardless of any other facts in the case.

"You are further instructed that imminent peril as used in these instructions does not mean a mere possibility of injury but certain *immediate* and impending peril." (Our italics.)

The first paragraph of this instruction purported to state to the jury plaintiff's theory of recovery against the Express Company and Collier. Certainly the above italicised portion thereof was confusing and mixed issues, as the court said in its order. It was in ·conflict with' its second paragraph and with plaintiff's main ▮▮▮ instruction IIIP. Literally it seems to state a duty on "the said occupants of the Teague car thereafter to avoid striking the vehicle driven by defendant Carl Collier, with the means at hand, by stopping, slackening the speed or swerving his truck." (It might be scientifically possible to do this by radio control.) No one ·can know what the jury thought this meant but we surely cannot disagree with the view of the trial judge that it was confusing. In the first place, an occupant, being a guest in Alice Teague's car as was plaintiff, would have no duty in the actual operation of that vehicle. ˙ Moreover, the requirement "that the occupants of said Teague car were oblivious to their peril in time, by the exercise of ordinary care on their part;" would seem to make their contributory negligence an issue on a humanitarian negligence submission,· and it is well settled that this is reversible error. [Larey v. M.-K.-T. Ry. Co., 333 Mo. 949, 64 S. W. ·(2d) 681; Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. (2d) 548 and cases cited.] Furthermore, it is also well settled that when a motion for new trial is sustained an appellate court will be more liberal in upholding such action than it might be

in reversing a judgment on the same ground on appeal. [Thompson v. St. Joseph R., L. H. & P. Co., 345 Mo. 31, 131 S. W. (2d) 574; See also Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297; Taylor v. Farmers Bank of Chariton County, 349 Mo. 407, 161 S. W. (2d) 243.] This is because the trial judge, having participated in the trial, had the best opportunity to determine the effect of any error, and granting a new trial is the exercise of judicial discretion which will be upheld unless abused or clearly erroneous. [See Schipper v. Brashear Truck Co. (Mo. Sup.), 132 S. W. (2d) 993.] We, therefore, hold that the errors in the first paragraph of instruction 10D constitute a sufficient basis for granting a new trial.

Appellants also say that the second paragraph of this instruction, placed too great a burden upon plaintiff, conflicted with plaintiff's instructions, submitted a physical impossibility, was self-contradictory and too narrowly restricted the zone of peril. These criticisms are based on the use of the term "immediate and inescapable peril" in the instruction and the reference to the ability of the truck driver to see the occupants of the car in such peril. A requirement of "inescapable peril" does narrow the danger zone and make obliviousness immaterial. [Melenson v. Howell, 344 Mo. 1137, 130 S. W. (2d) 555.] However, this instruction referred only to the occupants of the car being in inescapable peril and separately stated the obliviousness of the driver as a ground of recovery, while plaintiff's main instruction IIIP required a finding that both the driver and plaintiff "were unable to extricate themselves", from the imminent peril submitted. Therefore, it was more favorable to plaintiff than her own instruction. Of course, what was necessary for recovery under humanitarian negligence on this issue was a finding that plaintiff was in a position of imminent peril because of the actual obliviousness of the driver of the car in which she was riding; that the reasonable appearances of the situation were such that the truck driver knew or should have known thereof in time to have thereafter acted to prevent the collision by warning signal, slackening speed or stopping; and that he had the means and time to do so effectively thereafter. [Womack v. Missouri Pacific R. Co., 337 Mo. 1160, 88 S. W. (2d) 368; Perkins v. Terminal R. Co., 340 Mo. 868, 102 S. W. (2d) 915.] It made no difference whether he saw or could have seen any occupants of the car. Therefore on re-trial, reference to ability to see the occupants of the car should be eliminated, as there is no evidence that Collier could have seen them.

However, we do not agree with plaintiff's criticism of the word "immediate." It is argued that if peril is immediate it would be so instantaneous that it would be impossible to do anything to prevent a collision from it; and, on this reasoning, it is also argued that the definition of imminent peril, in the last sentence of the

1194

instruction, is erroneous. Such a definition is in accord with our decisions. [See Wallace v. St. Joseph R., L. H. & P. Co., 336 Mo. 282, 77 S. W. (2d) 1011 and the Court's comments on the instruction approved therein; Mahl v. Terrell, 342 Mo. 15, 111 S. W. (2d) 160, and cases cited; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S. W. (2d) 31; Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S. W. (2d) 296; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S. W. (2d) 562; Roach v. Kansas City Public Service Co. (Mo. Sup.), 141 S. W. (2d) 800; Frailey v. Kurn, 349 Mo. 434, 161 S. W. (2d) 424; see also State ex rel. Kansas City Public Service Co. v. Bland, 354 Mo. 868, 191 S. W. (2d) 660, holding it improper to include a direction about avoidable danger but not criticising the word "immediately;" Hendrick v. Kurn, 352 Mo. 848, 179 S. W. (2d) 717.] Webster's New International Dictionary gives the definition of "immediate," relating to time, as "near, or pertaining to the present" and its synonyms as "proximate, close, next, direct." Antonyms given in the Second Edition are "remote, distant, gradual." We, therefore, hold that it is a proper word to use in clarifying the issues in a humanitarian negligence submission and approve this definition of imminent peril.

 Since the case must be re-tried, we overrule plaintiff's contention that there was no evidentiary basis for a sole cause instruction in this case. The negligence of Alice Teague is confessed and whether or not Collier was negligent under the humanitarian rule was for the jury. If the jury found that he was not so negligent because of her sudden running on to United States Highway 61 at high speed, without reasonable appearances of her obliviousness or intention to do so, when his truck was so near to the intersection and traveling at such a rate of speed that he did not have sufficient time thereafter to prevent the collision by doing any of the acts required of him under the humanitarian doctrine, then they could reasonably have found that her conceded negligence was the sole cause thereof and of plaintiff's injuries. [See Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47.] However, the proper way to submit this issue would be to hypothesize the essential facts of her conduct as shown by the testimony rather than to attempt to split them into several separate charges submitted disjunctively, some of which as stated might not alone be sufficient as a sole cause submission, as was done in instruction 7D herein. [See Jants v. St. Louis Public Service Co., No. 40017, 356 Mo. 985, 204 S. W. (2d) 698, decided April 1947 Session; Kimbrough v. Chervitz, 353 Mo. 1154, 186 S. W. (2d) 461; Shields v. Keller, 348 Mo. 326, 153 S. W. (2d) 60; Stanich v. Western Union Telegraph Co., 348 Mo. 188, 153 S. W. (2d) 54; Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742; Borgstede v. Waldbauer, 337 Mo. 1205,

88 S. W. (2d) 373.] We think this instruction is subject to the criticism that it did not make clear the decisive fact issues on sole cause and allowed consideration of what might be contributory negligence only.

Instruction 7D submitted disjunctively, as separate sufficient grounds for finding sole cause, failure of Alice Teague to stop before entering the intersection when there was a stop sign posted there, failure to keep a vigilant watch ahead as she approached, and entered the intersection, and running her car toward and into the intersection at a high, unsafe and dangerous rate of speed. It required no finding as to the relation of such acts or omissions in time or place to the approach of the truck to the intersection as did instructions approved in the above cited cases. Anyone of these acts or omission alone might have been only antecedent or concurring negligence with the humanitarian negligence submitted, although all of them combined, under the circumstances shown by defendant's evidence, would support a sole cause finding. As held in Doherty v. St. Louis Butter Company, supra, a defendant, in a humanitarian case, may "affirmatively show *a state of facts* which, if true, would place the entire blame for the injury upon the plaintiff (or as here a third party) and by an appropriate instruction submit that question to the jury." (Our italics.) (339 Mo. 996, 98 S. W. (2d) 1. c. 746.) However, as stated therein, an appropriate instruction "must be specific and not leave room for the jury to consider contributory negligence as a defense." The best way to eliminate the issue of contributory negligence is to hypothesize those essential facts, which, if found by the jury, would be equivalent to a finding that the negligence of Alice ▮▮▮ Teague was the sole cause of the collision. [See Borgstede v. Waldbauer, supra, 88 S. W. (2d) 1. c. 378.] Instruction 7D did not require a finding of all such facts.

The order granting a new trial is affirmed. All concur.